IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| RONALD GRIMES, | CASE NO. 1:24-cv-192 |
| Plaintiff, | DISTRICT JUDGE DONALD C. NUGENT |
| vs. | |
| AMAZON.COM SERVICES, INC. TENMARKS EDUCATION LLC, et al.,[1] | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | REPORT & RECOMMENDATION |

In January 2026, Defendant Amazon.com Services, LLC, filed a motion for summary judgment, moving to dismiss Plaintiff Ronald Grimes's complaint in its entirety. *See* Doc. 57. In March 2026, Grimes opposed Amazon's motion, Doc. 60, and later that same month Amazon filed its reply, Doc. 61. Based on the parties' arguments and for the reasons stated below, I recommend that the Court grant Amazon's motion for summary judgment.

---

[1] The identity of the Defendant or Defendants in this action has been a disputed issue. *See* Docs. 14, 15, 27. In an apparent effort to remedy the confusion, Grimes filed an amended complaint, which named Amazon.com Services LLC as defendant. *See* Doc. 41. Defendant followed suit in its answer. Doc. 45, at 1. Although the caption to its current motion describes itself as "Amazon.com Services, Inc.," Doc. 57, at 3, the body of its motion and supporting memorandum describe itself consistent with the amended complaint, *id.*; *see* Doc. 57-1, at 10. For simplicity, the Court refers to Defendant as *Amazon*. But because no party has moved to amend the case caption, the Court continues to use the case caption that conforms with the docket.

**Background Facts**

*Grimes's Positions at Amazon*

In November 2018, Grimes began his employment at Amazon as a Fulfillment Associate at a sortation center in North Randall, Ohio. *See* Doc. 57-4, at 1. At the time of his employment, Amazon provided Grimes with its Code of Business Conduct and Ethics policy along with the Owner's Manual and Guide to Employment. Doc. 57-2 at 5.

In October 2022, Grimes applied for and received a promotion to a Transportation Associate ("TA") position. Doc. 57-2 at 26. The TA position for which Grimes applied, and the position he accepted, was on a nightshift and started at 6:30 p.m. on Wednesday through Saturday. *Id.* at 27; *see also* Doc. 57-3, at 64. Nevertheless, after accepting the nightshift TA position, Grimes contacted Amazon's Employee Resource Center, and ultimately Amazon's Disability and Leave Services ("DLS"), requesting an accommodation to work the day shift. Doc. 57-2, at 27–28; Doc. 57-4, at 3. He claimed that he could not work the night shift due to childcare obligations and the fact that he used a CPAP machine. Doc. 57-2, at 27–28.

In response, Amazon's DLS team contacted Grimes about his request for a day shift accommodation and instructed him to provide supporting medical documentation within seven days. *See* Doc. 57-2, at 29–30; Doc. 57-3, at 72; Doc. 57-4, at 3. Grimes failed to provide documentation to support his accommodation request, Doc. 57-3, at 82–83, Doc. 57-4, at 3, and, as a result,

2

DLS closed Grimes's accommodation request, Doc. 57-4, at 3, 45. DLS also informed Grimes that it would reopen his accommodation request if he provided the requested documentation within 30 days. *Id.* at 3, 45.

After DLS closed Grimes's accommodation case, Grimes submitted a complaint to Amazon's "Ethics Line," in which he asserted that since he began working at Amazon, he had applied for several job openings but was precluded from consideration based on "mysterious" write-ups. Doc. 57-3, at 84. Grimes claimed that, in addition to these write-ups, he did not want to work nights because he took medication that made him drowsy and that he felt intimidated on his current team due to its lack of diversity. *Id.* Grimes acknowledged, however, that other team members and supervisors helped him. *Id.*

*Events Surrounding Grimes's Termination*

Over the course of his employment between 2018 and 2023, Grimes received multiple verbal and written warnings, suspensions, and terminations, some of which were rescinded on appeal. *See e.g.*, Doc. 57-3, at 39; Doc. 57-4, at 5–28. In December 2022, toward the end of Grimes's employment at Amazon, two notable incidents took place.

First, on December 10, 2022, Grimes maneuvered his vehicle into another driver's safety bubble and, as a result, hit the other driver's tractor with his trailer. Doc. 57-3, at 91. As a result of this incident, Amazon issued Grimes a final written warning for willfully violating minimum safe driving-distance requirements. *Id.*

Second, on December 31, 2022, Grimes threatened to tie one end of a rope around another TA and the other end of the rope around a horse, "and watch the horse drag the [other] TA around the yard." *Id.* at 92–93. Another TA recorded Grimes making this threat on the other TA's phone and then showed that recording to other Amazon employees. Doc. 57-4, at 3. Amazon suspended Grimes pending Amazon's investigation of this incident. *Id.* at 71. During the investigation, Grimes denied making the comment and stated that he "does not own a horse" and that he "often vent[s] but it is not meant as serious." Doc. 57-3, at 92. Two witnesses who saw the recording, however, provided written statements confirming that Grimes made the comment. Doc. 57-4, at 3.

Based on its investigation, Amazon concluded that Grimes made the described threat of violence against another TA and thus violated Amazon's Standards of Conduct and Workplace Violence policies. Doc. 57-3, at 92; Doc. 57-4, at 4;  As a result, Amazon terminated Grimes's employment on February 3, 2023. Doc. 57-3, at  94; Doc. 57-4, at 4

Also on February 3, 2023, Grimes alleged to Amazon that Amazon wrongfully terminated him. Doc. 57-3, at 93, 95. Amazon investigated Grimes's wrongful-termination claim and declined to overturn Grimes's termination. *Id.* at 95. Grimes appealed Amazon's decision to terminate him and Amazon scheduled an appeal hearing via phone call. Doc. 57-3, at 96. Amazon notified Grimes of the time and date for the hearing. *Id.*; *see* Doc. 57-2, at 40.  Grimes

missed the call from Amazon because, he asserted, his "phone blocked the call." Doc. 57-2, at 40–41; *see* Doc. 57-3, at 96. Later that day, Grimes emailed Amazon's human resources department to ask about rescheduling the hearing. Doc. 57-3, at 96. Amazon declined to grant Grimes a new hearing, Doc. 57-5, at 4, and based on Grimes's conduct, upheld his termination.Doc. 57-3, at 94–95; Doc. 57-5, at 4.

*Prior Administrative Proceedings*

In October 2020, Grimes filed a charge of discrimination against Amazon with the Ohio Civil Rights Commission ("OCRC"). Doc. 57-6, at 5. Grimes alleged that Amazon discriminated and retaliated against him based on race, sex, cognitive disability, and age by issuing discipline that blocked his ability to transfer to other positions. *Id.* Grimes listed 12 separate disciplinary incidents between July 15, 2018, and October 15, 2020. *Id.* On June 24, 2021, the OCRC found no probable cause, dismissed Grimes's charge, provided notice of right to file suit in state court, and informed him that he could seek review with the Equal Employment Opportunity Commission ("EEOC"). Doc. 57-6, at 6–8.

On October 25, 2023, after his termination, Grimes filed with the EEOC a second charge of discrimination against Amazon. Doc. 57-6, at 11. On November 8, 2023, the EEOC notified Grimes that it would "not proceed" on his claims and issued him a right-to-sue notice. Doc. 57-6, at 14–18.

*Grimes's Federal Complaint*

In his federal complaint, Grimes presents three counts. Count I alleges violations of Title VII of the Civil Rights Act and Title I of the Americans with Disabilities Act "because of disability, race, and retaliation." *See* Doc. 41, at 4–9. Count II alleges violations of Ohio Revised Code § 4112.02(A), claiming employment discrimination "based on erroneous assumptions about [Grimes's] race, EEO complaints, and disability." *Id*. at 9–10. Count III alleges a violation of Ohio Revised Code § 4112.02(J), which prohibits any person from aiding and abetting acts of employment discrimination.  *Id*. at 10–11.

**Legal Standards**

*Summary Judgment*

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party may, but is not required "to produce evidence showing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). As the rule says, the moving party may "discharge[]" its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*.

A party asserting that a fact is in genuine dispute, i.e. the party opposing summary judgment, must do more than simply say that it is so. *See Bennett v. Louisville Metro Gov't*, 616 F. App'x 820, 823 (6th Cir. 2015); Fed. R. Civ. P.

56(c)(1). Rather, a party asserting that there is a genuine dispute must support his assertion with "cit[ations] to *particular parts* of materials in the record" or he must show either that his opponent's evidentiary "materials … do not establish the absence … of a genuine dispute, or that [the movant] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1) (emphasis added); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). And "[i]f a party … fails to properly address another party's assertion of fact …, the court" has the discretion to "consider the fact undisputed for purposes of the motion" and, if otherwise appropriate, grant summary judgment. Fed. R. Civ. P. 56(e); *see Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 345 (6th Cir. 1984) ("Plaintiffs … are not entitled 'to get to the jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial'") (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968)).

*Employment Discrimination*

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Americans with Disabilities Act (ADA) prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to" employment. 42 U.S.C. § 12112(a). Ohio Revised Code § 4112.02(A) provides similar prohibitions:

> with regard to individuals in protected classes, … mak[ing] it unlawful for an employer "to discharge without just cause, to refuse to hire, or otherwise to discriminate against [a] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

*Arnold v. City of Columbus*, 515 F. App'x 524, 529 (6th Cir. 2013) (Title VII); *Senter v. Hillside Acres Nursing Ctr. of Willard, Inc.*, 335 F. Supp. 2d 836, 844 (N.D. Ohio 2004) (Ohio courts regard the § 4112.02(A) prima facie case as 'virtually identical' to the ADA's, and 'look to regulations and cases interpreting the [ADA] for guidance' in interpreting the Ohio law.") (citations omitted). Given this similarity, "[t]he same analysis generally applies to claims under Title VII," the ADA, and the Ohio Civil Rights Act. *Arnold*, 515 F. App'x 529; *Senter*, 335 F. Supp. 2d at 844.

An employee may establish a discrimination claim by either direct or circumstantial evidence. *See Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015). To evaluate employment discrimination claims based on circumstantial evidence, the Court applies the burden shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] *See Hayes v. Clariant Plastics & Coatings USA, Inc.*, 144 F.4th

---

[2] If a plaintiff has direct evidence of discrimination—for instance, if an employer admits that it fired or demoted a plaintiff based on the plaintiff's race—then resort to the *McDonnell Douglas* burden-shifting framework is unnecessary. *See Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020). Given his focus on whether the *McDonnell Douglas* framework should apply, the Court understands Grimes to be relying on a circumstantial-evidence theory.

8

850, 857 (6th Cir. 2025). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *Id.*; *see Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Burdine*, 450 U.S. at 253. If the defendant is able to provide a *legitimate nondiscriminatory reason*, then the burden shifts back to the plaintiff to show that the stated reason is mere pretext and that the real reason for the adverse employment action was unlawful discrimination. *Id.* Throughout this burden-shifting process, the burden of persuasion remains on the plaintiff. *Id.*

To make out a prima facie case of discrimination, a plaintiff:

> must show that: (1) she was a member of a protected class, (2) she was discharged, (3) she was qualified for the position held, and (4) she was replaced by someone outside her protected class or treated less favorably than a similarly situated employee outside her protected class.

*Hayes*, 144 F.4th at 857–58.

At the pretext step, a plaintiff must show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012)).

9

**Discussion**

At the outset the Court notes three concerns with Grimes's briefing. The first is that Grimes's opposition, which was filed with the aid of counsel, is nearly devoid of citation to any supporting evidence. Rule 56(c)(1), however, requires Grimes to "cit[e] *particular* parts of materials in the record" to support any "asserti[on] that a fact" asserted by Amazon "is genuinely disputed." Fed. R. Civ. P. 56(c)(1) (emphasis added). And Grimes's near complete failure to follow Rule 56(c)(1) means that, except where noted, it is appropriate to "consider" Amazon's supported "assertion[s] of fact" as "undisputed for purposes of [its] motion." Fed. R. Civ. P. 56(e)(2); *see Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) ("there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact'"). As the Supreme Court has explained, once a defendant moving for summary judgment shows the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, who must cite "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Failing to heed this burden can warrant dismissal. *See Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 526 (6th Cir. 2023) ("Once" the movant shows the absence of a genuine dispute about a material fact, "the nonmoving party must present 'significant probative evidence' revealing that there is 'more than some metaphysical doubt as to the material facts' necessitating a

10

trial; if the nonmovant cannot do that, dismissal is warranted") (citation omitted).

The second concern is that Grimes's memorandum in support of his motion is, from pages two to fifteen, single-spaced. But with the exception of quoted material, filings by attorneys must be double-spaced. LR 10.1. Grimes's memorandum thus appears to have been filed in an attempt to evade the Court's local rule as to page limits, without leave of the Court. *See* LR 7.1(f). The Court may strike filings that violate this rule. *Kovach v. Affinity Whole Health LLC*, No. 21-cv-01817, 2023 WL 11986887, at *1 (N.D. Ohio Feb. 17, 2023).

The third concern is that Grimes spends the majority of his argument advocating that this Court should not apply the accepted analytical framework. *See* Doc. 60, at 9–14.[3] As part of this argument, Grimes first criticizes the Sixth Circuit's requirements for making out a prima facie case of discrimination, asserting that applying the fourth, comparator element "facilitate[s] any number of discriminatory practices." *Id.* at 9. And more generally, Grimes argues that the *McDonnell Douglas* framework should not apply on summary judgment. *Id.* at 9–11. In making this argument, Grimes relies on Justice Thomas's concurrence in *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025), the decision in *Ismael v. Roundtree*, 161 F.4th 752, 760

---

[3] The Court cites the CM/ECF-generated page numbers at the top of the parties' filings.

(11th Cir. 2025), and the concurrence in *Hollis v. Morgan State Univ.*, 153 F.4th 369 (4th Cir. 2025). *See id.* at 10. Grimes is correct that the idea of applying the *McDonnell Douglas* framework on summary judgment has been the subject of criticism. *See Hollis*, 153 F.4th at 388 n.2 (Quattlebaum, J., concurring). But this Court is "bound to follow the precedent of" the Sixth Circuit. *United States v. Blair-Torbett*, 230 F. App'x 483, 488 (6th Cir. 2007) (citation omitted). Under that precedent, the Court will apply the *McDonnell Douglas* framework, *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 376 (6th Cir. 2026) ("the *McDonnell Douglas* burden-shifting framework[] … applies at summary judgment"), and Grimes must show that he "was replaced by someone outside [his] protected class or treated less favorably than a similarly situated employee outside [his] protected class," *Hayes*, 144 F.4th at 857–58.

> 1. *Grimes failed to exhaust his federal claims.*

As a prerequisite to filing a Title VII or ADA discrimination case against an employer, an employee must file a charge of discrimination with the EEOC that includes all claims that the employee intends to bring in district court. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010); *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002). In other words, the employee's federal lawsuit cannot include claims that were not presented to the EEOC unless the claims are "reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* at 361–62. Additionally, once the EEOC "giv[es]" the employee notice of his right to file a lawsuit on his claims,

12

an employee has 90 days to file suit. 42 U.S.C. § 2000e-5(f)(1); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000) (explaining "that notice is *given*, and hence the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of [a right-to-sue] notification"). Possession of this right-to-sue letter from the EEOC is "a prerequisite to proceeding on [a] Title VII claim in … district court." *Maynard v. Town of Monterey, Tenn.*, 75 F. App'x 491, 493 (6th Cir.2003*); Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998).

Amazon notes that Grimes filed two administrative complaints, one in October 2020, and one in October 2023. Amazon says that both complaints were "dual-filed," meaning that they were filed with both the OCRC and EEOC. Doc. 57-1, at 16–17. It's not clear whether the first administrative complaint was "dual-filed," however.

To support the assertion that the 2020 administrative complaint was dual-filed, Amazon cites its counsel's declaration and "Ex. A" to the declaration. *Id.* at 16. Counsel's declaration, in turn, points the reader to Exhibit A. Doc. 57-6, at 1. Exhibit A is composed of two documents. The second is an OCRC form entitled "Charge of Discrimination Employment," and is self-evidently the form Grimes used to file his 2020 administrative complaint with the OCRC against Amazon. *Id.* at 5. The first document is a letter from the OCRC to Amazon.com informing it that it was named as a respondent in Grimes's complaint. *Id.* at 3–4. The only mention of the EEOC in either of these

documents is on the complaint form where "EEOC" is found next to a box *that is not checked*. *Id*. at 5. So the evidence submitted does not show, or allow the Court to infer, that Grimes filed an administrative complaint with the EEOC with respect the allegation in his 2020 complaint.

On the other hand, an EEOC regulation that neither party cites allows the Commission to "enter into agreements with State or local fair employment practices agencies to cooperate … in processing charges." 29 C.F.R. § 1626.10(a). And if such an agreement is in place, "[c]harges received by one agency under the agreement shall be deemed received by the other agency for purposes of [29 C.F.R.] § 1626.7," which has to do with the "timeliness of [a] charge." 29 C.F.R. § 1626.10(c).

For his part, Grimes ignores the first administrative complaint. *See* Doc. 60, at 8. In his opposition, he only mentions the 2023 administrative complaint. *Id*. Importantly, he does not claim that he received from the EEOC a right-to-sue letter as to the 2020 administrative complaint. And no such letter is found in the record as to the 2020 administrative complaint.

All of this means that Amazon is correct that the Court can't review federal claims in Grimes's complaint having to do with his 2020 OCRC allegations. Based on the record before the Court, Grimes never filed an administrative complaint with the EEOC as to the 12 disciplinary incidents recited in his 2020 OCRC complaint. But even if he had or 29 C.F.R. § 1626.10 somehow applies, there is no right-to-sue letter in the record as to these

incidents. Without a right-to-sue letter, Grimes can't seek review of those claims. *Maynard*, 75 F. App'x at 493.

There's more. Because Ohio is "'a "deferral state," … which has enacted its own laws prohibiting discrimination in employment,'" Grimes had a "300–day period" from the date of each allegedly discriminatory act "in which to file an EEOC charge." *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001) (quoting *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999)); *see Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 520 n.4 (6th Cir. 2021). But there is no evidence that Grimes pursued these claims before the EEOC.

Amazon calculates Grimes's time to sue on the 2020 claims as 90 days from the date in June 2021 when the OCRC notified Grimes that it had dismissed Grimes's charge. Doc. 57, at 21. The statute, however, refers to notice from the EEOC ("or the Attorney General in a case involving a government, governmental agency, or political subdivision"), not a state agency. *See* 42 U.S.C. § 2000e-5(f)(1). "A Letter of Determination from the OCRC is not a substitute for an EEOC notice of right-to-sue."[4] *Botter v. Tuesday Morning*, No. 18-cv-0847, 2019 WL 2452987, at *2 (S.D. Ohio June 12,

---

[4]     Some courts will "assume[]" that "when an EEOC notice of right-to-sue on a dual-filed charge is not part of the record, … the EEOC adopted the findings of the OCRC and issued a notice of right-to-sue within a few months of the OCRC's determination." *Botter*, 2019 WL 2452987, at *2. There is no evidence that Grimes's complaint was dual-filed. But if it were and if this Court were to indulge the assumption in *Botter*, Grimes's complaint in this case as to his 2020 OCRC allegations would still be untimely by about two years.

15

2019), *report and recommendation adopted*, 2019 WL 2643681 (S.D. Ohio June 27, 2019). So there is no basis follow Amazon's calculation.

Nonetheless, for the reasons discussed, whether they are unexhausted or time-barred, Grimes cannot not obtain review of allegations related to incidents alleged in his 2020 OCRC complaint. To be clear, Grimes argued in his first charge that Amazon discriminated and retaliated against him by issuing discipline to block his requested transfers to other positions between December 2018 and October 2020. *See* Doc. 57-6, at 5. The facts described in Grimes's first charge pertain to a failure to promote or transfer Grimes after Amazon implemented allegedly harassing discipline. *Id.* Grimes's claims arising from Amazon's alleged failure-to-promote on a discriminatory or retaliatory basis are thus either unexhausted or not timely presented.

Grimes filed a second administrative charge on October 25, 2023, on a form that indicates that it was filed with the OCRC and EEOC. *See* Doc. 57-6, at 9–13. The EEOC issued Grimes a right-to-sue letter on November 8, 2023. *Id.* at 14. Grimes filed this suit on January 31, 2024, within 90 days from when the EEOC issued its notice.

Amazon asserts that most of Grimes's federal claims are based on facts that were not presented or reasonably related to those contained in Grimes's October 2023 charge. *See* Doc. 57-1, at 18–19. As a result, Amazon argues, the majority of the federal claims raised in this action have not been

16

administratively exhausted and cannot be presented in the first instance to this Court. *Id.* at 18–19. Amazon is correct.

In his second charge, Grimes claimed that "[d]uring [his] employment," Amazon failed to provide him with clothes, equipment, training or help necessary for him to complete training as a TA and that his suspension, and ultimate termination, amounted to discrimination and retaliation. *See* Doc. 57-6, at 11. By contrast, the operative complaint asserts a host of other facts and circumstances, including those covered in Grimes 2020 OCRC complaint, that go well beyond what he included in his 2023 EEOC charge. Outside of his wrongful termination and retaliation claims, it cannot be said that the claims in Grimes's federal complaint are "reasonably related to or grow out of the factual allegations in the [administrative] charge." *See Younis*, 610 F.3d at 361. Contrary to Grimes's argument, his 2023 charge didn't allege anything about discrimination in terms of promotion, failing to accommodate a disability, or disciplining him before Amazon terminated him. *See* Doc. 57-6, at 11. To the extent Grimes's complaint encompasses these allegations, they are time-barred or unexhausted.

This brings us to the question of how to calculate what is timely as to Grimes's 2023 charge. Working backwards, the statue mandates that for dual-filed claims, any claims based incidents more than 300 days before October 25, 2023—those before December 31, 2022—are time-barred. *See* 42 U.S.C. § 2000e-5(e)(1).

Grimes, however, says that the continuing violations doctrine saves his otherwise time-barred claims. Doc. 60, at 8. It's hard to see this argument as anything more than half-hearted. Grimes devotes only three sentences to it and doesn't explain the doctrine that he says applies. So he's forfeited the argument. *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013).

Moreover, even if he hadn't forfeited the argument, Grimes doesn't contend with directly applicable Supreme Court precedent. In *National Railroad. Passenger Corporation v. Morgan*, the Court said that:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice."

536 U.S. 101, 114 (2002). In other words, the claims that Grimes brings are discrete acts that are separately actionable. So the continuing violations doctrine does not apply. *See id.* As a result of Grimes's failure to timely raise and exhaust most of his federal claims through the administrative process, he is now barred from raising all but his discriminatory termination, retaliation, and state law claims. Because there is no genuine dispute that Grimes's remaining claims, including those based on a failure to promote and failure to accommodate were not properly or timely presented, the Court should grant Amazon's motion for summary judgment as to those federal claims.

2. *Grimes failed to establish the prima facie elements for his discrimination claims.*

Amazon argues that Grimes "provides no direct evidence of discrimination." Doc. 57-1, at 19. Amazon is correct, and, since Grimes concedes that his employment discrimination claims rely on circumstantial evidence of alleged discrimination, his claims are evaluated through the *McDonnell Douglas* burden-shifting framework. *See Hayes*, 144 F.4th at 857. By moving for summary judgment, Amazon calls on Grimes "to 'put up or shut up' on" his discrimination allegations by asserting that there is no genuine issue of material fact and that Grimes cannot demonstrate the prima facie elements of the claims he raises. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). To establish a prima facie case, Grimes has to do more than simply rely on his pleadings; he has to come forward with evidence to show that there is a genuine issue for trial. *Hunley v. DuPont Auto.*, 341 F.3d 491, 496 (6th Cir. 2003); *see Bennett*, 616 F. App'x at 823 (6th Cir. 2015) ("Bald assertions do not a jury question make").

In his complaint, Grimes discussed all of his federal claims together. *See* Doc. 41, at 4–9. But for organizational purposes, his discrimination claims are best broken down into the following categories: (a) discriminatory termination; (b) failure to promote; and (c) retaliation. Each are addressed in turn below.

19

        *a. Grimes fails to establish a prima facie claim of discriminatory termination.*

To establish a prima facie case of discriminatory termination, a plaintiff must show that he was: (1) a member of a protected class; (2) subject to an adverse employment action; (3) qualified for the position; and (4) replaced by a person outside the protected class, or that similarly situated individuals outside of the protected class were treated more favorably. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (quotation and citation omitted). To determine whether an employee is similarly situated, the relevant inquiry is whether the individual outside the protected class reported to the same supervisor, was subject to the same standards, and engaged in comparably serious misconduct. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). A plaintiff must identify specific individuals, not just make general claims about how employees outside of his protected class were treated. *See Tschappatt v. Crescent Metal Prods., Inc.*, 798 F. App'x 887, 889 (6th Cir. 2020).

Because it is undisputed that Grimes is a member of a protected class, was qualified for his role, and experienced adverse employment action, the only issue is whether Grimes has shown that there is a genuine dispute of fact about whether he was replaced with a person outside of his protected class or that similarly situated individuals outside of his protected class were treated more favorably. *See Clayton*, 281 F.3d at 610. As the following analysis shows, Grimes has not made that showing.

Amazon asserts, and Grimes does not dispute, that the only discernable comparator that Grimes identified during his deposition was a male Caucasian co-worker, who he believes was named "Phil," who Grimes alleges shoved him in 2022.[5] Doc. 57-1, at 21; *see* Doc. 57-2, at 51; Doc. 60-3, at 16; *see also* Doc. 41, at 8. As noted, to establish the fourth element of his prima facie discriminatory termination claim, Grimes must show that Phil is *similarly situated* to Grimes but was treated better than Grimes.

The record before the Court shows that Grimes cannot make this requisite showing. Indeed, Grimes testified that Phil was a "white older male" who "fixed the machines" who was not on the TOM team, while Grimes worked as a TA on the TOM team. Doc. 57-2, at 51. And Grimes does not know what discipline Phil received other than that he was not terminated. Doc. 60-3, at 16. So there is no evidence that Phil worked for Grimes's supervisor or even in the same department as Grimes. There is also no evidence that he engaged in the same conduct as Grimes. There's therefore no evidence that he is similarly situated to Grimes.

Further, in support of its motion, Amazon has produced evidence showing that it has terminated associates for violating its policies against violence in the workplace, including but not limited to Caucasian associates.

---

[5]     Amazon cites Grimes's deposition at pages 479 to 480. Doc. 57-1 at 21. Unfortunately, Amazon did not include page 479 among its exhibits. *See* Doc. 57-2, at 50–51. Grimes, however, includes as an exhibit pages 327–28 of his deposition, which allows the Court to judge his testimonial evidence about his interaction with Phil.

*See* Doc. 57-4, at 4. Grimes not only concedes this evidence, but he barely disputes Amazon's argument that he can't show the fourth element of a prima facie case. *See* Doc. 60, at 13, 14. He doesn't mention Phil in his opposition to Amazon's motion. Instead, he says that "as discussed above," the record shows "that similarly situated employees outside his protected class were treated more favorably," and that he "has identified multiple instances where Amazon treated employees outside his protected class differently." *Id.* at 14. But, as Amazon notes, Doc. 61, at 6, even crediting Grimes's citationless earlier references to other employees—which the Court indulges here solely for this point—Grimes hasn't shown that others were treated more favorably. Instead, he has only succeeded in showing that *he* was treated more favorably than his Caucasian co-workers, *see* Doc. 60, at 7 (claiming that Amazon retained Grimes after an altercation with a Caucasian employee but terminated the other employee), 12 (recounting same incident), 13 (recounting same incident before asserting that Amazon terminated an employee who gave Grimes the employee's medication but did not terminate Grimes).

Moreover, even if Grimes had established a prima facie claim for discriminatory termination—which he has not—the burden would shift to Amazon to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Burdine*, 450 U.S. at 253. Amazon can "satisf[y]" this burden by "'explain[ing] what [it] has done or produc[ing] evidence of legitimate nondiscriminatory reasons.'" *Romans*, 668 F.3d at 839 (quoting

22

*Burdine*, 450 U.S. at 256). Amazon has shouldered this burden. It has provided a legitimate non-discriminatory reason for Grimes's termination: he committed a Category 1 violation of Amazon's Standards of Conduct. Doc. 57-4, at 3–4, 81. Further, it has presented undisputed evidence that it reached this conclusion following an investigation in which investigators reviewed video of the incident, took witness statements, and interviewed Grimes. Doc. 57-4, at 3-4, 46–76; *see Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, 618 (6th Cir. 2012) (finding similar evidence sufficient to show a legitimate, nondiscriminatory reason).

Grimes thus has the burden to show that Amazon's stated non-discriminatory reason is merely pretext. *See Romans*, 668 F.3d at 839 (explaining that to establish pretext an employee must show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action."). Grimes does not argue that Amazon's stated reason is not based in fact. In fact, he does not deny making the statement that gave rise to his termination. Instead, he points to his deposition testimony that he did not "mak[e] the statements as a serious threat and explained that he often vents without meaning such statements serious." Doc. 60, at 15. Even taking this testimony in the light most favorable to Grimes, however, he doesn't explain why his subjective opinion that he wasn't serious renders pretextual Amazon's reason for his termination.

23

Grimes also says that the fact that he does not own a horse "undermin[es] the credibility of any claim that he intended to carry out the threat." *Id.* This argument might be somewhat easier to take seriously if Amazon's standards of conduct required investigators to evaluate how difficult it would be for an employee to carry out threats of violence. But the standards of conduct don't impose that burden on investigators. *See* Doc. 57-4, at 81.

With reference to a declaration authored by Julius Phillips, he says that the pretextual nature of his termination is evident from the fact that "Amazon conducted no investigation into the context of the statement of Plaintiff's intent." Doc. 60, at 15. Phillips's declaration only recounts his interaction of playing an audio recording for investigators. Doc. 60-1, at 2. It doesn't say anything about the rest of Amazon's investigation or whether investigators considered Grimes's intent. So Phillips's declaration does not support Grimes's assertion.

Grimes notes that Amazon didn't reschedule his appeal after—he says—his phone blocked Amazon's call. Doc. 60, at 12. He says that "[t]his deviation from normal procedure supports an inference that Amazon's stated reason for termination for termination was pretextual." Doc. 60, at 16. On summary judgment, the Court must draw reasonable inferences in Grimes's favor. But Grimes doesn't establish his premise; he doesn't point to any evidence that Amazon's procedure when an employee misses an appeal phone call is to do anything that Amazon didn't do in Grimes's case. So he has not identified a

24

deviation. And without a deviation, there is not basis to draw the inference that Grimes suggests is warranted.

Without citing anything, Grimes says that Amazon didn't interview him after the incident. Doc. 60, at 13. Grimes's deposition testimony and Amazon's investigative record show that's not true. *See* Doc. 57-2, at 35–37; Doc. 57-4, at 71. Indeed, Grimes testified that he gave a statement and spoke to at least one investigator for "[a] long time." Doc. 57-2, at 36.

Grimes has offered nothing that would allow the Court to infer that Amazon did not "make a reasonably informed and considered decision." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998). He has therefore not shown that there is genuine issue of fact as to whether Amazon's reason for firing him was pretextual.

The Court should grant summary judgment on Grimes's state and federal discriminatory termination claim.

> b. *Grimes fails to establish a prima facie claim of discriminatory failure-to-promote.*

Grimes argues that he has a valid failure-to-promote claim. Doc. 60, at 14. But, as discussed, that aspect of his federal claim is unexhausted and untimely. This leaves Grimes state-law claim under Ohio Revised Code § 4112.02(A). Amazon does not argue that an Ohio claims-processing rule or statute of limitations would bar this Court's review of this claim.[6]

---

[6] In Ohio, a statute of limitations is an affirmative defense. *See Mills v. Whitehouse Trucking* Co., 320 N.E.2d 668, 670–71 (Ohio 1974). Because

Remembering that Ohio's courts analyze claims under section 4112.02(A) consistent with similar federal claims, to establish a prima facie case of discrimination based on failure to promote, a plaintiff must establish that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied a promotion; and (4) an individual of similar qualifications outside the protected class received the desired job or promotion instead. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020–21 (6th Cir. 2000). "[T]o satisfy the fourth prong of the *prima facie* burden in a failure to promote case, it is incumbent on the plaintiff to establish that [he] and the non-protected person who ultimately was hired for the desired position had similar qualifications." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005).

Here, Grimes alleges that he applied for job openings at Amazon 39 times and that he withdrew his applications from consideration several times. *See* Doc. 57-2, at 23–24. Ultimately, Amazon hired Grimes as a TA, which was one of the positions he applied for. Doc. 57-2, at 26. Grimes does not, as he must, provide any evidence that he was qualified for any other positions for which he applied or that individuals with similar qualifications and outside of

---

Amazon is represented by counsel, there is no reason for the Court to raise this defense for Amazon. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025); *Frank v. Good Samaritan Hosp. of Cincinnati*, No. 21-3795, 2023 WL 2523297, at *3 (6th Cir. Mar. 15, 2023) ("In our adversarial system, judges rely on the parties' attorneys to present evidence, develop the record, and make arguments in favor of their clients' positions.").

his protected class received promotions or open positions instead of him. Since he hasn't tried to show that whoever was hired for any other position was not in a protected class or that he had similar qualifications to whoever was hired, his claim must fail. *See White*, 429 F.3d at 242.

Instead of trying to carry his burden, Grimes says that circumstantial evidence supports his claim. He argues that he "complained that he always received mysterious write-ups that precluded him from consideration for promotions." Doc. 60, at 14. There are a few problems with this argument. For starters, although he cites pages 102, 104, and 106 of his deposition, neither party has supplied those pages to the Court. Further, Amazon's evidence shows that the "write-ups" were not "mysterious." Instead, the basis for Amazon's discipline is reflected in the record, which also shows that Amazon informed Grimes why he was disciplined. *See* Doc. 57-3, at 40–50; 57-4, at 2–3, 7–10, 21–32.

Grimes's characterization of his "write-ups" as "mysterious" is thus both unsubstantiated and contradicted by the record. *See* Doc. 57-3, at 49–50 (summarizing two incidents—one in May 2022, for throwing an object while working on the shipping dock, and another in September 2022, for arguing with another associate and pulling and pushing on a cart tote—and informing Grimes that his ability to transfer would be temporarily limited as a result).

Grimes notably does not rely on his deposition testimony that "[i]t seemed like when [he] withdrew an application, *they* would get off my back

27

with trying to give me more write-ups." *See* Doc. 57-2, at 24 (emphasis added). This is perhaps because his subjective opinion about how things "seemed" is not evidence that, contrary to Amazon's evidence, there were no bases for his discipline.

In any event, Grimes has not shown that there is a genuine question of fact as to whether a similarly qualified individual received a promotion or job that he sought. *See White*, 429 F.3d at 242. As a result, Grimes fails to establish a prima facie failure-to-promote claim.

Amazon is thus entitled to summary judgment on Grimes's state law failure-to-promote claim.

> ### c. *Grimes has not established a prima facie claim of retaliation.*

Grimes argues that he has a valid federal and state-law retaliation claim. Without citing any evidence, he says that sought an accommodation and filed an Ethics Line complaint in late October 2022. Doc. 60, at 15. Grimes asserts that in response, Amazon "issue[d] [him] a final written warning on December 10, 2022, suspend[ed] him on December 31, 2022, and terminat[ed] his employment on February 3, 2023." *Id*. Contrary to Amazon's argument, Doc. 61, at 11, Grimes exhausted this claim in his 2023 EEOC charge, where he claimed that he "was discriminated against … in retaliation for engaging in protected activity." Doc. 57-6, at 11.

To establish a prima facie retaliation claim, under either state or federal law, Grimes must establish that (1) he engaged in a protected activity; (2)

28

Amazon knew of his protected activity; (3) Amazon took an action that was adverse to him; and (4) a causal connection existed between the protected activity and the materially adverse action. *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021). To prove a retaliation claim, a plaintiff must show that his protected activity "is the 'but-for' cause for [an] adverse action[]." *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 767 (6th Cir. 2025). This means that a plaintiff "must 'put forth some evidence to deduce a causal connection between the adverse action and protected activity,' that is 'sufficient to raise the inference' that the discrimination or 'protected activity was the likely reason for the adverse action.'" *Id.* (citations omitted).

Amazon's motion focuses on the causal-connection element, arguing the three-month period between Grimes's protected activity and his termination is too long to allow the Court to infer a connection between the activity and the termination. Doc. 57-1, at 28. In this regard, the Sixth Circuit has "noted that temporal proximity alone is not sufficient to support a retaliation claim … and that plaintiffs generally must show temporal proximity combined with 'other compelling evidence' of retaliation to support their claims." *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 446 (6th Cir. 2008) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)). On the other hand, "'there may be circumstances where evidence of temporal proximity alone would be sufficient to support [an] inference' of retaliation." *Id.* (quoting *Nguyen*, 229 F.3d at 567). If the retaliatory conduct follows within one to two

29

days of protected activity, a court may infer causation without additional evidence. *See id.*at 446–47. The cases in which a court could infer causation based solely on a temporal connection are "'limited [in] number.'" *Id.* at 447 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)); *cf. Mickey*, 516 F.3d at 523–26 (involving an "employer [who] fires an employee immediately after learning of a protected activity," although the activity occurred 12 days before). Basically, "the more that a protected activity is temporally distant from the adverse employment action, 'the more the plaintiff must supplement his claim with other evidence of retaliatory conduct to establish causality.'" *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 605 (6th Cir. 2022) (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010)); *see Lemaster v. Lawrence Cnty., Kentucky*, 65 F.4th 302, 310 (6th Cir. 2023) ("In most cases," when "a plaintiff … show[s] some moderate time gap—say, a matter of months," the Court's "summary-judgment inquiry … asks whether the plaintiff has offered enough 'other evidence of retaliatory conduct' apart from this temporal proximity"). And "three months … between" protected activity "and … termination[] [is] a firm indicator of a lack of a causal link." *Boshaw*, 32 F.4th at 605. Given Sixth Circuit precedent, Amazon is on solid footing in arguing that the delay between Grimes's protected activity is enough to show a lack of causation.

Although Grimes mentions the word *retaliation* in his complaint, his complaint does not clearly outline a separate retaliation claim *See* Doc. 41.

30

Grimes nonetheless claims that he has satisfied all elements of his retaliation claim. *See* Doc. 60, at 15. Grimes claims in response to Amazon's motion for summary judgment that his October 2022 protected activity—his request for an accommodation in the form of a move to the day shift and his Ethics Line complaint—is the reason not just for his termination but also for his final written warning and suspension in December 2022. *See* Doc. 60, at 15. The two instances of protected activities in October 2022, are not, however, cited in Grimes's complaint. *See* Doc. 41. Additionally, Grimes's complaint is silent as to any final written warning issued to Grimes on December 10, 2022. *See id.* So, to the extent that Grimes now argues that his October 2022 protected activity could support a retaliation claim or that the December 10, 2022 final written warning was retaliatory, this factual basis for his retaliation claim is presented for the first time in his response to Amazon's motion for summary judgment. These factual assertions are thus not properly presented and do not raise a genuine question of fact as to Grimes's retaliation claim. *Cf. Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 817 (6th Cir. 2020) ("[Plaintiffs] cannot assert new claims in response to summary judgment. Ultimately, the plaintiff's amended complaint 'must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory.").

Putting this problem aside, to the extent that Grimes argues the temporal proximity between his protected activities and his warning,

31

suspension, and termination "combined with the other circumstantial evidence discussed above establishes a causal connection," his argument fails. *See* Doc. 60, at 15. In this regard, Grimes doesn't explain his vague reference to *other circumstantial evidence*. Indeed, the circumstances discussed above include evidence that Amazon treated Grimes *more favorably* than other employees.

It is true that six weeks elapsed between Grimes's protected activity and his warning on December 10, 2022, but Grimes does not dispute that Amazon had a valid basis for giving him a warning. *See* Doc. 60, at 15–16. Indeed, his separate argument about pretext ignores his warning. *Id.* at 15–16.

As to the suspension and termination, two and three months respectively elapsed between protected activity and adverse actions. Those times periods, without more, are not enough to infer causation. *See Boshaw*, 32 F.4th at 605; *Nguyen*, 229 F.3d 566-67. And, as discussed, Grimes doesn't have more to offer. His reference to circumstantial evidence is not explained and he has not raised a genuine issue of fact as whether Amazon's reason for firing was pretextual.

Based on all of these reasons, the Court should grant summary judgment as to Grimes's federal and state-law retaliation claims.

3. *Grimes has not established a prima facie claim of a hostile work environment.*

Grimes's federal hostile-work-environment claim is neither timely nor exhausted. So he can only go forward on a hostile-work-environment claim under Ohio Revised Code § 4112.02(A). To establish a hostile-work-

environment discrimination claim based on race or disability, an employee must show that (1) he was a member of a protected class; (2) he was subject to harassment; (3) the harassment was based on his race or disability; (4) the harassment unreasonably interfered with his work performance; and (5) and employer liability, which amounts to knowledge plus a failure to act. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009); *see Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 50 (6th Cir. 1996). To demonstrate the type of harassment that can form the basis for a hostile work environment claim, "the plaintiff must show conduct that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusing working environment.' Conduct that is 'merely offensive' will not suffice to support a hostile work environment action." *May v. GMC Mansfield Metal Fabricating*, 61 F. App'x 171, 173 (6th Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see Barrett*, 556 F.3d at 514. While conduct that is not explicitly race-based may still be considered in a hostile-work-environment analysis, the plaintiff must nevertheless have evidence that would show that *but for* the employee's protected status, he would not have been the subject of harassment. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir. 1999).

As Amazon points out, Grimes has not established the third through fifth prima facie elements. Doc. 57-1, at 26. Grimes does not point to any harassing conduct that was related to his race or disability. Indeed, Grimes's complaint does not allege any facts to show that that any harassing conduct

occurred. *See* Doc. 41, at 5–8 (generally referencing "harassment" and "unwelcome and offensive remarks" but providing no examples of what that conduct was or who engaged in it). And, although Grimes testified that a co-worker said, "something to [the] nature" of him needing to "be with [his] own demographic," Doc. 57-2, at 49–50, he could not recall when the co-worker allegedly said this and he could not provide any other examples of allegedly harassing comments. This isolated comment is insufficient to constitute the sort of sufficiently severe or pervasive conduct necessary to support a hostile-work-environment claim. *See Harris*, 510 U.S. at 21 (explaining that "'mere utterance of an … epithet which engenders offensive feelings in an employee,' does not sufficiently affect the conditions of employment to implicate Title VII") (citation and quotations omitted)).

Indeed, in his opposition to Amazon's motion, Grimes concedes that he "may not have identified specific racial slurs or explicitly race-based conduct." Doc. 60, at 17. But he urges the Court to deny summary judgment because, in his opinion, a jury reasonably could infer that the lack of diversity and intimidating environment were related to his race. Doc. 60, at 17. This concession and request that the Court deny summary judgment based on his belief regarding what a jury might infer from the facts, ignores that Grimes bears the burden of establishing a prima facie claim. *See Burdine*, 450 U.S. at 253. Indeed, Grimes's concession that he can't identify specific conduct defeats

34

any assertion that he has established a prima facie hostile-work-environment claim.

Grimes also says that he complained on Amazon's Ethics Line that he "felt intimidated on his … team because it lacked diversity." Doc. 60, at 17. But Grimes does not support this assertion with a citation to the record. So there is no basis to consider it. *See* Fed. R. Civ. P. 56(c)(3). Additionally, his burden requires him to show pervasive hostility. An alleged lack of diversity on his team, without more, is not enough to raise a genuine issue of fact about whether he was subjected to pervasive hostility.

Grimes also says that he has demonstrated "a pattern of discipline and adverse treatment throughout his employment that a reasonable jury could find was sufficiently severe or pervasive." *Id*. at 17. Even if this were true— and given Grimes's persistent failure to cite the record, it isn't—the fact alone that Grimes was disciplined isn't a basis for the Court to infer that the discipline was on account of his status.

Amazon is thus entitled to summary judgment on Grimes's hostile-work-environment claims.

4. *Grimes Fails to Establish a Prima Facie Failure-to-Accommodate Claim.*

Grimes's federal failure-to-accommodate claim is neither timely nor exhausted. So he can only go forward on a failure-to-accommodate claim under Ohio Revised Code § 4112.02(A). To establish a prima facie failure-to-accommodate claim a plaintiff "must show that (1) [he] was disabled …; (2) [he]

35

was otherwise qualified for [his] position, with or without a reasonable accommodation; (3) [the employer] knew or had reason to know about [his] disability; (4) [he] requested an accommodation; and (5) [the employer] failed to provide the necessary accommodation." *Brumley v. United Parcel Service, Inc.*, 909 F.3d 834, 839 (6th Cir. 2018); *see Snyder v. U.S. Bank Nat'l Ass'n*, 251 N.E.3d 196, 203–04 (Ohio Ct. App. 2024). Throughout the accommodation request process, the parties must engage in an "informal, interactive process" which is necessary because employers are not required "to make on-the-spot accommodations of the employee's choosing." *Brumley*, 909 F.3d at 840. Instead, the employer must work with the employee to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007), in turn quoting 29 C.F.R. § 1630.2(o)(3)). "[T]he interactive process is mandatory, and both parties have a duty to participate in good faith." *Id.* (quotations omitted). Similar requirements apply in Ohio. *See Colfor Mfg., Inc. v. Ohio C.R. Comm'n*, 102 N.E.3d 1157, 1166 (Ohio Ct. App. 2017).

Through this interactive process, "the employer need not take the employee's word for it that the employee has [a condition] that may require special accommodation." *EEOC v. Prevo's Fam. Mkt., Inc.*, 135 F.3d 1089, 1094 (6th Cir. 1998). Instead, an employer may request documentation that would support the employee's requested accommodation. *Id.* An employer is not

36

required to provide an accommodation until the employee provides medical documentation showing the need for an accommodation. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 670 (6th Cir. 2020). Along these lines, if "a plaintiff voluntarily withdraws from the interactive process based on a defendant's request for verification, the plaintiff fails to show that the defendant denied her requests for accommodations." *Id.*  And "an employee's failure to provide requested medical documentation supporting an accommodation precludes a failure to accommodate claim." *Tchankpa*, 951 F.3d at 812.

Since "ADA discrimination 'claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination[,]' the familiar *McDonnell-Douglas* burden-shifting framework (applicable to claims premised on indirect evidence) … does not apply." *Brumley*, 909 F.3d at 839 (quoting *Kleiber*, 485 F.3d at 868–69 (6th Cir. 2007)). Instead, the employee must first establish that an employer failed to accommodate a known disability, and then the burden shifts to the employer to "prov[e] that ... a proposed accommodation will impose an undue hardship upon the employer." *Id.* (quoting *Kleiber*, 485 F.3d at 868–69).

Here, assuming that Grimes has met the first three elements of a prima facie failure-to-accommodate claim, his claim is doomed because he has not pointed to evidence showing that Amazon failed to accommodate him. Instead,

37

the facts before the Court show that Grimes abandoned the interactive process. Indeed, the only evidence before the Court shows that Amazon requested medical documentation to support Grimes's accommodation request and Grimes attempted to obtain that documentation. *See* Doc. 57-3, at 76–83. But, as Amazon points out, the record shows that Grimes visited his physician for a letter because "HR … asked him to get a letter signed by his provider," and his physician "refused" to "writ[e] [the] letter since [Grimes's] excuse didn't sound like medical or heath issue." Doc. 57-3, at 80–81; *see id.* at 83. Grimes's physician also noted that Grimes "showed [his] frustration and threatened [that] he would quit the job because [Grimes's doctor] didn't write the letter." Doc. 57-3, at 81; *see id.* at 82. The record also shows that Grimes's physician instructed Grimes to visit an ophthalmologist to confirm his alleged night-vision deficiency and, if confirmed, his physician would have provided a letter based on that safety concern. Doc. 57-3, at 81; *see* Doc. 57-2, at 31–32. Notably, the record is silent about whether Grimes made any further efforts to obtain the medical documentation requested by Amazon or his own physician.

Once Grimes failed to provide the requested documentation, Amazon closed Grimes's accommodation claim. Doc. 57-4, at 35 (explaining that "we have not received your medical documents to proceed with accommodation request. At this time, we will be temporarily closing your case until medical documents are received. Your case can be reopened if sufficient medical documentation is provided within 30 days."). But, even then, Amazon informed

38

Grimes that if he could obtain the requested medical documentation that it would reopen his request. *Id*. Grimes does not allege that he ever obtained medical documentation supporting the requested accommodation or that he made any subsequent effort to have Amazon reopen his request.

Instead, Grimes attempts to confuse the issue. After noting that his physician refused Grimes's request, he references his "cognitive disabilities." Doc. 60, at 16. But he omits that his accommodation request was not based on those deficits. And he doesn't claim that Amazon was required on its own to come up with an accommodation on a basis that that he didn't ask for.

Grimes next says that he "provided non-medical reasons for his request" and pointed to his use of a CPAP machine and medicine that made him drowsy at night. *Id*. But all of these points ignore binding case law that allowed Amazon to request medical documentation for Grimes's request and the fact that he had to participate in the interactive process, which he didn't.

Based on the record, thus, there is no genuine dispute of material fact that Grimes voluntarily abandoned the interactive process and, consequently, his accommodation request. *See Tchankpa*, 951 F.3d at 812. There is no evidence that would support or allow the Court to infer that Amazon failed to accommodate Grimes. As a result, Amazon is entitled to summary judgment on this claim.

5. *Grimes's Aiding and Abetting Claim Fails.*

Grimes alleges that Amazon is liable under Ohio Revised Code § 4112.02(J), which makes it is an unlawful discriminatory practice:

> for any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

Notably, Section 4112.02(J), applies to persons, not only employers. *Glass v. Tradesmen Int'l, LLC*, 505 F. Supp. 3d 747, 761–62 (N.D. Ohio 2020). And "[a] corporate entity may not aid and abet itself in discriminating against a plaintiff." *Id.* at 762. So Grimes's claim under section 4112.02(J), which is alleged only against Amazon, fails. As such, Amazon is entitled to summary judgment on this count.

### Conclusion

For all of the reasons stated, I recommend that the Court grant Amazon's motion for summary judgment.

Dated: April 22, 2026

_/s/ James E. Grimes Jr._
James E. Grimes Jr.
U.S. Magistrate Judge

40

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).